TARLETON *vs.* SOUTHERN BANK OF ALABAMA.

[ACTION ON BILL OF EXCHANGE, BY ENDORSEE AGAINST DRAWER.]

1. *Proof of consideration of bill, and of parol agreement for discharge in Confederate treasury-notes; admissibility of.*—In an action by an endorsee, against the drawer of a bill of exchange, or bank-check, which was drawn by a bank in Mobile, on a bank in New Orleans, in August, 1862, (after the capture of New Orleans by the Federal forces,) "payable in currency," and which was not presented to the drawee until after the close of the late war; it is permissible for the defendant, under the provisions of the third section of the ordinance (No. 26) adopted on the 28th September, 1865, to prove "that it was understood and agreed between the bank and said B. [payee], at the time of drawing the bill, that, if it could not be sent to New Orleans in a short time, it should be returned to the bank, and the same amount of money that B. had paid for it, which was Confederate treasury-notes, should be returned to him;" and evidence which tends to show that, at the time the plaintiff purchased the bill, this agreement was communicated to him by the payee, is also competent and admissible for the defendant.   (BYRD, J., *dissenting.*)

2. *Ordinance No. 26, adopted September 28, 1865, admitting parol evidence of consideration of Confederate contracts; constitutionality and validity of.*—The third section of the ordinance adopted by the State convention on the 28th September, 1865, (No. 26,) so far as it declares that, "in all suits upon contracts made between the 1st September, 1861, and the 1st May, 1865, parol evidence shall be admissible to prove what was the consideration thereof, and whether or not the parties thereto understood or agreed that the same should be discharged by a payment in Confederate currency or treasury-notes," simply changes a rule of evidence, as the legislative power might lawfully do, and does not impair the obligation of contracts within the meaning of the constitutional prohibition. (BYRD, J., *dissenting.*)

APPEAL from the Circuit Court of Mobile.
Tried before the Hon. C. W. RAPIER.

THIS action was brought by George W. Tarleton, against the Southern Bank of Alabama; was commenced on the 7th September, 1865; and was founded on a bill of exchange, or bank-check, of which the following is a copy:

"Southern Bank of Alabama, Mobile, Aug. 26, 1862.
"Louisiana State Bank, New Orleans:

Pay this, my first check, (second unpaid,) to the order of Alfred Batre, No. 6,715, eleven thousand (payable in currency) dollars."

"$11,000." (Signed) "DAN'L C. SAMPSON, Cash'r."

Endorsed, "Alfred Batre."

The complaint contained two counts. The first count claimed of the defendant eleven thousand dollars, "due on a bill of exchange drawn by said defendant, on the Louisiana State Bank at New Orleans, in favor of the order of A. Batre, on demand, in currency, and bearing date, Mobile, August 26, 1862; which said bill was endorsed and delivered to plaintiff by said Batre, and was afterwards duly presented to said drawee, and protested for non-payment; of all which said defendant had due notice." The second count was in these words: "Plaintiff claims of defendant, also, the further sum of eleven thousand dollars, due on a certain other bill, or check, drawn by defendant on the Louisiana State Bank at New Orleans, for the sum aforesaid, in favor of A. Batre, or order; dated August 26, 1862, payable on presentation, and which was delivered by defendant to said Batre, and by him endorsed and delivered to the plaintiff. And plaintiff avers, that, at the time of the drawing of said bill, and for a long time afterwards, war existed between the United States and the (then) Confederate States of America; that the city of New Orleans, the locality of said drawee, was in the occupancy of the United States, and the city of Mobile (the residence of all the parties to said bill and the plaintiff) in the occupancy of the Confederacy; and that all intercourse, of every kind, between citizens of the two places, was prohibited by both governments. As soon, however, as peace prevailed, and intercourse between the two places, and plaintiff could legally present said bill, to-wit, on the 11th day of May, 1865, he caused the same to be presented for payment to said drawee, who refused to pay the same; whereupon, the same was duly protested for non-payment; of which defendant had due notice." No objection was interposed to

the complaint. The defendant pleaded "the general issue, in short by consent;" and issue was joined on that plea.

On the trial, at the January term, 1866, as the bill of exceptions shows, the plaintiff read in evidence the bill of exchange, or check, on which the action was founded, with the protest thereof; "to the reading of which no objection was made." "The plaintiff then proved, that, before the drawing of said bill, New Orleans was in the possession of the Federal forces, who continued to hold it until the end of the war; that Mobile was taken by the Federal forces on the 12th April, 1865, but trade was not opened immediately, nor for a month or six weeks afterwards; though permits were granted by the commanding officers, to some persons, to introduce goods, which were mostly brought in government vessels; that some persons were allowed to go to New Orleans, on passports, but others, who applied for such passports, were refused. The defendant then introduced Daniel C. Sampson as a witness, who was the cashier of the bank, and who testified, that the bank sold the bill to Batre at a premium of thirty per cent.; that the bank, at the time of drawing the bill, had funds in the Louisiana State Bank at New Orleans, to the amount of nineteen thousand dollars; that those funds remained in said bank at New Orleans, until September, 1863, when the same was seized by the United States government, who still hold the same, though the defendant is petitioning the government for its return. The defendant then offered to prove, by said Sampson, that it was understood and agreed between the defendant and said Batre, at the time of drawing said bill, that, if the bill could not be sent to New Orleans in a short time, it should be returned to the bank, and the same amount of money that Batre had paid for it, which was Confederate treasury-notes, should be returned to him. To this testimony of Sampson, as to the oral agreement, the plaintiff objected, but his objection was overruled; to which the plaintiff excepted.

"The defendant then introduced said Batre as a witness, who testified, that the bank informed him that they had exchange on New Orleans for sale; that he, being a broker,

·offered to sell exchange on New Orleans to Tarleton, who agreed to buy from him eleven thousand dollars, at thirty-five per cent. premium; that he then went and bought the bill from the bank, and immediately sold it to Tarleton, at a premium of thirty-five per cent., and received the money from him when he handed him the bill. The defendant then asked Batre, if he communicated to Tarleton the agreement between himself and the bank; to which Batre answered, that he remembered no agreement about the bill, further than that Sampson, at the time of drawing the bill, said that the bank wished it sent to New Orleans as soon as it could be done; that he communicated this to Tarleton, but did not remember to have communicated any more, and did not remember any more that was said by Sampson; but that he communicated to Tarleton all that Sampson said to him. To the portion of Batre's testimony showing that he told Tarleton the bank wanted the bill sent to New Orleans as soon as possible, and that he told Tarleton all that Sampson told him, the plaintiff objected, but his objection was overruled; to which the plaintiff excepted.

" After the argument had commenced, the plaintiff again moved the court to exclude from the jury that portion of Sampson's testimony objected to, and that portion of Batre's testimony objected to; and excepted to the refusal of the court to exclude it. In consequence of the ruling of the court in admitting that portion of Sampson's testimony objected to, and in not afterwards excluding it from the jury, the plaintiff took a nonsuit, with a bill of exception."

The rulings of the court on the evidence, as above stated, are now assigned as error.

E. S. DARGAN, for appellant.

SMITH & HERNDON, contra.

(No briefs have come to the Reporter's hands.)

A. J. WALKER, C. J.—The trial in the court below resulted in a nonsuit, taken by the plaintiff in consequence of rulings upon questions of evidence. We shall restrict this opinion to those questions. The bill of exchange, which is the subject of suit, was drawn at Mobile, in August,

1862, by the Southern Bank of Alabama, on a party in New Orleans, in favor of Alfred Batre, who endorsed it to the plaintiff. At the date of the bill, the two cities of Mobile and New Orleans were in the possession of antagonistic belligerents, *flagrante bello.* That fact is proved, as an excuse for the delay in the presentation to the drawee, which was not made until the war closed. The defendant then offered to prove, by said Sampson, "that it was understood and agreed between the defendant and said Batre, at the time of drawing said bill, that, if the bill could not be sent to New Orleans in a short time, it should be returned to the bank, and the same amount of money that Batre had paid for it, which was Confederate treasury-notes, should be returned to him." The exception to the admission of this testimony presents the material question to be decided by us.

An ancient and well-known principle forbids the introduction of parol evidence, which effects an alteration of a written contract. This rule, touching the remedy only, is subject to legislative control. The convention, exercising the legislative power of the State, on the 28th September, 1865, adopted an ordinance, the third section of which abolished that rule, to a limited extent, as to a certain class of contracts. That section is in the following words : " In all suits upon contracts made between the first of September, 1861, and the first of May, 1865, parol evidence shall be admissible to prove what was the consideration thereof, and whether or not the parties thereto understood or agreed that the same should be discharged by a payment in Confederate currency or treasury-notes ; and if so, or if it appears so from the contract, then to show what was the true value of the consideration of the said contract, and what amount the plaintiff is legally, justly, and equitably entitled to receive according to the contract, by the judgment of the said court."

It is certain that, under this section, parol evidence is admissible for two purposes : first, to show the consideration of the contract ; and, secondly, to add to the contract, as expressed in writing, a stipulation that it might be discharged in Confederate currency or treasury-notes. As to

its admissibility to a farther extent, or for other purpose, we are not required to say anything. The testimony above quoted states, that the bill of exchange was given for Confederate treasury-notes. It therefore had an immediate bearing upon the point of the consideration. The remainder of the testimony showed, or tended to show, an agreement that, in the event the bill could not be sent to New Orleans in a short time, it should be returned, and discharged with like money. We intend no intimation as to the sufficiency or insufficiency of the evidence. Our purpose is accomplished by ascertaining the tendency of the evidence, and we inquire no farther. This evidence, bearing upon the question of an agreement for the discharge of the bill in Confederate treasury-notes, was, under the ordinance, admissible. It was permissible for the defendant to show that the consideration was Confederate currency, and that there was an agreement for its discharge, in a specified contingency, in like money. The evidence being relevant to these points, it was admissible.

If Batre agreed that, in the contingency of an inability to send the bill to New Orleans in a short time, he would return the bill for discharge by the bank in Confederate treasury-notes, the contract, as modified by the parol evidence, was alternative. In the specified contingency, it was Batre's duty to return the bill, and to afford an opportunity for its discharge according to the agreement; and there was a corresponding right in the defendant.

The other evidence, to the admission of which exception was taken, was admissible in the point of view which we have presented.

While we intend to express no opinion upon the question, whether Tarleton was a holder with notice of the defensive matter, we remark, that there was evidence touching it, which it was proper to leave to the consideration of the jury.

The foregoing is the opinion at first delivered in this case. Since its delivery, a re-hearing has been granted, upon the petition of the able counsel for the appellant. A re-examination of the subject has confirmed us in the opinion above

expressed. The learned counsel contends, that if a contract specify a particular currency, or money, in which payment is appointed to be made, it is incompetent to prove a conflicting agreement or understanding for payment in Confederate treasury-notes; and if the ordinance of the convention be understood to authorize such proof, that it impairs the obligation of contracts. It is conceded that, at common law, such proof would be inadmissible. Why would it be inadmissible? Simply because a rule of evidence intervenes to prevent the ascertainment of the contract, if it was variant from the written instrument. The ordinance therefore designs, by a chage in the rules of evidence, to assist in the ascertainment of what the contract really was, and does not interfere at all with its obligation. It is well settled, that a change in the rules of evidence does not impair the obligation of contracts.— *Scheible v. Bacho*, at the present term; *Ex parte Pollard*, 40 Ala. 77; *Bloodgood v. Cammack*, 5 St. & P. 276; *Bartlett v. Lang*, 2 Ala. 401.

It is also contended, that to allow the defense set up in this case would impair the rights of an innocent holder of a bill of exchange for a valuable consideration, and let in a defense to the instrument in his hands, which was not by the law available against him; and that therefore the ordinance, in its effect upon this case, impairs the obligation of the contract, as between the drawer and innocent endorsee. This question does not arise in this case. The court ruled in favor of the admissibility of certain testimony, and the plaintiff thereupon took a *nonsuit*. We are therefore only to decide upon the admissibility of the evidence. The question would arise, if it appeared conclusively that the plaintiff was an innocent endorsee. It does not so appear. There was such evidence as required a reference of the question of innocent holder to the jury. A witness (Sampson) proved the contract as herein before stated; and there was evidence from which it might have been argued before the jury, with what correctness it is not for us to say, that this contract was communicated to the plaintiff. As it was a question in the case whether the

Tarleton v. Southern Bank of Alabama.

plaintiff was an innocent holder, it was right, conceding the point of law above stated to be correct, to admit the evidence.

The judgment is affirmed.

BYRD, J., dissenting, without committing himself in favor of any of the points made in the opinion of the court.